# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ELANA K.,

      Plaintiff,

                                      **Case No. 2:20-cv-6931**

    v.                               **Magistrate Judge Norah McCann King**

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

      Defendant.

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Elana K. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On August 18, 2016, Plaintiff filed her application for benefits, alleging that she has been disabled since July 30, 2015. R. 117, 128, 212–13. The application was denied initially and upon reconsideration. R. 141–45, 148–50. Plaintiff sought a *de novo* hearing before an administrative

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

law judge. R. 146−47. Administrative Law Judge ("ALJ") Sharon Allard held a hearing on

October 3, 2018, at which Plaintiff, who was represented by counsel, testified, as did a

vocational expert. R. 66−116. In a decision dated January 31, 2019, the ALJ concluded that

Plaintiff was not disabled within the meaning of the Social Security Act at any time from July

30, 2015, Plaintiff's alleged disability onset date, through September 30, 2018, the date on which

Plaintiff was last insured for disability insurance benefits. R. 10−19. That decision became the

final decision of the Commissioner of Social Security when the Appeals Council declined review

on April 3, 2020. R. 1−6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF

No. 1. On October 29, 2020, Plaintiff consented to disposition of the matter by a United States

Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil

Procedure. ECF No. 6.[2] On October 30, 2020, the case was reassigned to the undersigned. ECF

No. 8. The matter is now ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a

large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

(1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at \*4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at \*4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at \*4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at \*3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at \*4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists

only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. At 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to

scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

## B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff last met the insured status requirements of the Social Security Act on September 30, 2018. R. 12. She was 33 years old on that date. R. 17. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between July 30, 2015, her alleged disability onset date, and September 30, 2018, the date on which she was last insured. R. 12.

At step two, the ALJ found that Plaintiff suffered the severe impairment of seronegative degenerative arthritis. *Id*. The ALJ also found that Plaintiff's fracture of the fifth right toe was not severe. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 13.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional exertional and non-exertional limitations. R. 13–17. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a marketing manager. R. 17.

At step five, the ALJ found that a significant number of jobs—*i.e.*, approximately 208,177 jobs as an election clerk; approximately 5,822 jobs as a call out operator; approximately 6,379 jobs as a survey system monitor—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 17–19. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from July 30, 2015, her alleged disability onset date, through September 30, 2018, her date last insured. R. 19.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the

Acting Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 14. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 15.

## IV.    RELEVANT MEDICAL EVIDENCE

On November 22, 2016, Mark Horowitz, M.D.,[3] Plaintiff's treating physician, completed a three-page check-the-box and fill-in-the-blank form entitled "General Medical Report," R. 405–07, and a three-page check-the-box, fill-in-the-blank form entitled "Passive Range of Motion Chart," R. 408–10 (collectively, "Dr. Horowitz's 2016 opinion"); [4] *see also* R. 303–08 (duplicate). Dr. Horowitz first examined Plaintiff on March 27, 2012, with visits every three months thereafter. R. 303, 405. Dr. Horowitz noted a history of acute bilateral hand and wrist swelling and pain, which is aggravated by typing, childcare, and household work, and diagnosed seronegative rheumatoid arthritis ("RA"). *Id.* Dr. Horowitz left blank the question asking about treatment and response to treatment. R. 304, 406. According to Dr. Horowitz, Plaintiff could occasionally (up to one-third of the workday) lift and carry one pound but was unable to handle objects or perform fine motor skills such as using a computer. *Id.* Plaintiff had no limitations in standing and/or walking or sitting. *Id.* In assessing Plaintiff's range of motion, Dr. Horowitz reported that Plaintiff could not fully extend her left or right hands. R. 306, 408. Plaintiff's grip and pinch strength was 4/5, and Plaintiff could make a fist with both hands with 3/5 strength. *Id.*

---

[3] Plaintiff and the ALJ mistakenly refer to this physician as "Harowitz."
[4] The following summary reflects Dr. Horowitz's handwritten notes to the extent that the Court was able to decipher them.

However, Dr. Horowitz found that Plaintiff could not separate papers or button buttons. *Id*. Plaintiff had normal muscle strength (5/5) in her lumbar spine. R. 307, 409. Dr. Horowitz left blank questions regarding Plaintiff's use of a hand-held assistive device. R. 307−08, 409−10.

On April 7, 2018, Dr. Horowitz completed a five-page check-the-box, fill-in-the-blank untitled form, apparently for her insurance review providers. R. 412−16 ("Dr. Horowitz's 2018 opinion").[5] Dr. Horowitz reported that he first treated Plaintiff for her conditions on March 27, 2012, and most recently treated her on January 9, 2017. R. 412.  However, on a page appearing later in the form that contains the same questions, Dr. Horowitz reported that he most recently treated Plaintiff on March 22, 2018. R. 414. Dr. Horowitz indicated that Plaintiff's condition was work related and stated that he had advised her to stop working on July 24, 2012. R. 412, 414. Dr. Horowitz diagnosed rheumatoid arthritis and stated that Plaintiff's symptoms included pain with swelling in both her hands. *Id*. Dr. Horowitz also noted Plaintiff's right hand was her dominant hand and described Plaintiff's treatment as consisting of medication (Celebrex and Plaquenil). R. 413, 415.

In assessing Plaintiff's restrictions and limitations, Dr. Horowitz opined that Plaintiff could intermittently sit, stand, and walk 8 hours in a workday; she could climb, twist/bend/stoop, reach front and side at desk level, perform fine finger movements, and perform eye/hand movements less than one hour in a workday; she could intermittently reach above shoulder level 4 hours in a workday. R. 413. According to Dr. Horowitz, Plaintiff could not lift or carry any weight during a workday but could push or pull up to 10 pounds for up to one hour in a workday. *Id*. However, on a page appearing later in the form that contains the same questions, Dr.

---

[5] The following summary reflects Dr. Horowitz's handwritten notes to the extent that the Court was able to decipher them.

Horowitz provided different opinions: He opined that Plaintiff could intermittently sit for 8 hours in a workday with breaks every hour; she could intermittently stand and walk for 2 hours in a workday with breaks every hour; she could climb, twist/bend/stoop, reach front and side at desk level, perform fine finger movements, and perform eye/hand movements for less than one hour in a workday; and she could intermittently reach above shoulder level for 2 hours in a workday. R. 415. Dr. Horowitz opined that Plaintiff could lift and carry and up to 10 pounds and push or pull up to 10 pounds for less than 1 hour in a workday. *Id*. Dr. Horowitz also opined that Plaintiff could operate a motor vehicle and had not yet reached maximum medical improvement. R. 413, 415. Dr. Horowitz had not advised Plaintiff when she could return to work because of "severe ADL [activities of daily living] dysfunction." R. 416. Finally, in response to the question asking him to list any restrictions on Plaintiff's ability to work or engage in activity, Dr. Horowitz wrote that Plaintiff "[h]as very limited use of her hand." *Id*.

## V.  DISCUSSION

### A.  The opinions of Mark Horowitz, M.D.

Plaintiff challenges the ALJ's consideration of the opinions of Dr. Horowitz, Plaintiff's treating physician. *Plaintiff's Brief*, ECF No. 14, pp. 9–11. Plaintiff's arguments are not well taken.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz v.*

*Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli,* 247 F.3d at 42 ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed before March 27, 2017,[6] "'[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (3d Cir. 2001) (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d

---

[6] As previously noted, Plaintiff's claim was filed on August 18, 2016. For claims filed after March 27, 2017, the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources").

Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The ALJ must consider the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. § 404.1527(c)(1)–(6). Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

In the case presently before the Court, the ALJ found at step four of the sequential evaluation process that Plaintiff had the RFC to perform sedentary work subject to certain additional limitations as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the work may require up to frequent lifting of things weighing less than ten pounds. The work may also require np to six hours of standing, walking, or sitting. However, the work may not involve crawling or climbing of ladders, ropes, or scaffolds. The work must also limit handling and fingering to a frequent basis, and must limit feeling or light touching to an occasional basis.

R. 13. In reaching this determination, the ALJ, *inter alia*, assigned "little weight" to Dr. Horowitz's 2016 and 2018 opinions, reasoning as follows:

> To begin with, there are records firmly establishing the claimant's care under Dr. Harowitz [sic] from as early as 2014 and through 2018, the year of this adjudication (B3F/2, 6). Within these records, there are repeated instances of laboratory findings that objectively establish the inflammatory condition, dating between July 30, 2015 and June 26, 2018 (B3F/121-127, 111-118, 102-108, 127). These reports frequently revealed the claimant's mean platelet volume ('MPV') to be high at varying levels, consistent with the inflammatory impairment found here. In effect, these are among the signs establishing the existence of the condition since before the alleged onset date and through the date of this decision, establishing a sufficient basis to find the above limitations. However, there are also some counterbalancing indications consistent with finding some retained capacities in the claimant's function.

> For example, throughout some of the laboratory results returned normal, including with respect to MPV, during as recent as the year 2017 (e.g B3F/102, 111, 115). In addition, most of the x-ray results in the record and dating between December 14, 2014 and November 10, 2016 return unremarkably, negating signs of direct musculoskeletal abnormality in the wrists and fingers (B2F/l-2; B3F/119-120). Only in one of the MRIs of the left hand from before the alleged onset date showed signs of mild abnormality (B3F /110). The normal radiological imaging study report dates are sporadic and spread out enough to indicate that the claimant retained some degree of lifting, carrying and manipulative abilities within the above residual functional capacity. These are among the signs that prevent finding more than the above limitations.

R. 14.

13

Among such records, on November 22, 2016, Dr. Harowitz [sic] evidently filled a medical source statement form opining that the claimant cannot lift more than one pound and cannot handle objects, perform fine motor skills, and use the computer (B1F/2). While the doctor's long term treating relationship with the claimant warrants careful consideration of his opinions, the extent of limitation he opines of here is simply incongruent with his laboratory findings, his own later opinions, and the other notes of this form. That is, in this form he notes levels of strength the claimant's grip and pinch at a level four out of a scale of five, or at eighty percent of normal (B1F/4). He does note that the claimant's fist strength is only as strong as a level three out of five, but this is still a retention of sixty percent of normal strength (B1F/4). He also notes eighty percent of finger opposability (B1F/4). Along with these observations being inconsistent with the mentioned opinion, they are also inconsistent with his note that the claimant cannot separate papers and fasten buttons (B1F/4). Moreover, the claimant's daily living testimony about her care of her children indicate that she may perform these functions of paper separation and buttoning at least occasionally (Test,; B1F/4). For these reasons, and because of the way this opinion compares with Dr. Harowitz's [sic] more recent ones, little weight is given to it to the extent that it supports finding higher lifting limitations than the disability determination physician consultants found.

R. 15.

Finally, Dr. Harowitz [sic] also provided an opinion to insurance review providers on April 7, 2018 that, while still supporting more than minimal physical limitations, presents a different extent of limitation than the 2016 opinion (B3F/96-100). In the opinion, Dr. Harowitz [sic] generally notes very limited use of h[er] hand and severe hand dysfunction (B3F/100). However, in other parts of the form, Dr. Harowitz [sic] specifies that the claimant can stand or walk two hours, sit for eight hours, and lift up to ten pounds, but only for less than one hour in a workday (B3F/99). This contrasts with the older opinion from 2016 where the doctor indicated the claimant could only lift up to one pound (B1F/2). There is also a conflicting opinion in the same form where the doctor indicated the claimant could not lift any weight, although it is not clear what context this part of the form serves (B3F/97). Overall, these opinions are given little weight for their inconsistency with the record and lack of clarity, but only to balancing the overall limitations in favor of the claimant.

R. 16–17. The Court sees no error in the ALJ's reasoning in this regard. The ALJ explicitly considered Dr. Horowitz's long-time treating relationship with Plaintiff but discounted his 2016 opinion because (1) it was inconsistent with his own laboratory findings and later opinion; (2) it was internally inconsistent; and (3) was inconsistent with Plaintiff's testimony about her daily life activities. R. 15. The ALJ went on to discount Dr. Horowitz's 2018 opinion because it was

14

also internally inconsistent, inconsistent with his 2016 opinion and record evidence, and because

of its "lack of clarity." R. 16−17. Substantial evidence supports the ALJ's reasoning in this

evaluation of Dr. Horowitz's opinions. *See* 20 C.F.R. § 404.1527(c)(1)−(6); *Brunson v. Comm'r

*of Soc. Sec.*, 704 F. App'x 56, 59−60 (3d Cir. 2017) (finding that the ALJ "appropriately gave

less weight" to medical opinions where although one physician concluded the plaintiff "was

limited in his work abilities, his report lacked adequate support for this determination" and that

physician's "conclusion conflicted with both [the plaintiff's] self-reported daily activities and

[the physician's] own positive reports after [] surgery" and discounted another physician's

opinion as "inconsistent with the record evidence[,]" including that physician's "own findings

that [the plaintiff] maintained normal grip strength and intact reflexes"); *Cunningham v. Comm'r

*of Soc. Sec.*, 507 F. App'x 111, 118 (3d Cir. 2012) ("[I]t is appropriate for an ALJ to consider the

number and type of activities in which a claimant engages when assessing his or her residual

functional capacity."); *Smith v. Astrue*, 359 F. App'x 313, 316 (3d Cir. 2009) (concluding that,

where the treating source's "medical opinion is contradicted by several pieces of evidence in the

record and also contains internal inconsistencies, it is not entitled to the level of deference

otherwise accorded to a treating physician's opinion"); *Wimberly v. Barnhart*, 128 F. App'x 861,

863 (3d Cir. 2005) (holding that the ALJ did not err by refusing to assign controlling weight to a

treating physician's opinion that "was itself internally inconsistent"); *Metzger v. Saul*, No. CV

19-270, 2019 WL 3530442, at *7 (E.D. Pa. Aug. 2, 2019) ("Moreover, courts have consistently

held that an ALJ may grant less weight to a treating physician's opinion where it conflicts with

his or her own treatment notes.") (citations omitted); *Samah v. Comm'r of Soc. Sec.*, No. CV 17-

08592, 2018 WL 6178862, at *6 (D.N.J. Nov. 27, 2018) (finding that substantial evidence

supported the ALJ's decision to discount a treating physician's opinion where, *inter alia*, the "opinion was not consistent with the Plaintiff's own testimony").

Plaintiff nevertheless challenges the ALJ's evaluation of Dr. Horowitz's opinions, complaining first that "all of the evidence that is ignored or not given controlling weight is consistent with each other. The evidence that is ignored is only inconsistent with the evidence the ALJ wanted to use." *Plaintiff's Brief*, ECF No. 14, pp. 9−10. However, Plaintiff does not identify this "evidence that is ignored," nor does she otherwise provide any citation to the record where such evidence appears. *See id*. The Court will not hunt through the record to find evidence to support Plaintiff's arguments. *See Atkins v. Comm'r Soc. Sec*., No. 19-2031, 2020 WL 1970531, at *4 (3d Cir. Apr. 24, 2020) ("'[J]udges are not like pigs, hunting for truffles buried in the record.'") (quoting *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006)) (internal citation omitted)); *see also United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("[T]his Court has frequently instructed parties that they bear the responsibility to comb the record and point the Court to the facts that support their arguments.").

Plaintiff further complains that the ALJ assigned "little weight" to Dr. Horowitz's 2016 opinion "due to minor inconsistencies[.]" *Plaintiff's Brief*, ECF No. 14, p. 10. However, as set forth above, substantial evidence supports the ALJ's decision to discount Dr. Horowitz's opinion as internally inconsistent. *See Brunson*, 704 F. App'x at 59−60; *Smith*, 359 F. App'x at 316; *Wimberly*, 128 F. App'x at 863. Plaintiff also challenges the ALJ's finding that Dr. Horowitz's 2016 opinion was inconsistent with Plaintiff's testimony regarding her care for her children, arguing that the ALJ relied on her own speculation. *Plaintiff's Brief*, ECF No. 14, p. 10. However, for the reasons discussed later in this decision, the Court concludes that the ALJ properly discounted Plaintiff's subjective statements. In any event, even if the ALJ erred in

discounting Dr. Horowitz's 2016 opinion as it relates to her care of her children, this factor was but one of the factors that the ALJ considered, and Plaintiff has not explained how the weight given to Dr. Horowitz's 2016 opinion would have changed in light of the fact that his extreme opinion was internally inconsistent. *See id.*; *see also Shinseki v. Sanders*, 556 U.S. 396, 409−10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm.").

Plaintiff goes on to challenge the ALJ's consideration of Dr. Horowitz's 2018 opinion, arguing that "there isn't a conflict" in his findings regarding Plaintiff's ability to lift and carry because Dr. Horowitz "is stating the same thing. The Plaintiff must be limited in her ability to lift or carry. Whether it is inconsequential weight throughout the day, or being limited to 10 pounds for less than an hour, both are a finding below the normal sedentary range of work. They are consistent with each other." *Plaintiff's Brief*, ECF No. 14, p. 11. Plaintiff's arguments are not well taken. As a preliminary matter, the ALJ appropriately discounted Dr. Horowitz's conflicting statements regarding Plaintiff's ability to lift and carry that resulted in a "lack of clarity," which thereby undermined the reliability of his opinion. *Cf. Brunson*, 704 F. App'x at 59−60; *Smith*, 359 F. App'x at 316; *Wimberly*, 128 F. App'x at 863; *Costa v. Colvin*, No. CV 15-665, 2016 WL 5390138, at *3 (W.D. Pa. Sept. 26, 2016) ("Dr. Gallon provided information that was internally inconsistent, which undermines the reliability of his opinion."). However, even if such internal inconsistencies were harmless, the ALJ also found that Dr. Horowitz's 2018 opinion was inconsistent with record evidence. R. 17. For example, the ALJ gave "significant weight" to the opinion of David Silver, M.D., that Plaintiff could, *inter alia*, lift and carry up to ten pounds occasionally. R. 16. Similarly, the ALJ assigned "significant weight" to the opinion of

consultative examiner Betty Vekhnis, M.D., who opined that Plaintiff could, *inter alia*, use both hands for fine and gross motor manipulation. R. 15; *see also* R. 17 (discounting Dr. Horowitz's opinion that Plaintiff has "very limited use of his [sic] hand and severe hand dysfunction"). In addition, as detailed above, the ALJ noted that Plaintiff's normal radiological imaging study reports support the lifting, carrying, and manipulative limitations contained in the RFC. R. 14.

In short, for all these reasons, the Court concludes that the ALJ's evaluation of Dr. Horowitz' opinions enjoy substantial support in the record.

### B.    Subjective complaints

Plaintiff also challenges the ALJ's consideration of her subjective complaints, contending that the ALJ erred in failing to discuss her testimonial evidence that supports these complaints, and thus requiring remand. *Plaintiff's Brief*, ECF No. 14, pp. 11–14. Plaintiff's arguments are not well taken.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)). Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)). Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id*. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit

18

an individual's ability to perform work-related activities[.]" *Id.*; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").[7]

_____

[7] SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term "credibility."  SSR 16-3p.  However, "while SSR 16-3P clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other record evidence remains the same." *Levyash v. Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered Plaintiff's subjective complaints. R. 13–14, 17. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 17. The ALJ detailed years of medical evidence and record testimony to support her findings. R. 14–17. For example, the ALJ noted that Plaintiff testified that she drives her children to school daily and uses a cell phone and texts occasionally; laboratory findings that objectively establish an inflammatory impairment, but that most x-ray results dating between December 14, 2014, and November 10, 2016, were normal; only one MRI of the left hand showed signs of "mild abnormality"; the ALJ assigned "significant weight" to the opinion of the consultative examiner, Dr. Vekhnis, that Plaintiff could *inter alia*, use both hands for fine and gross motor manipulation, could walk without an assistive device, could walk on heels and toes, and could squat; that Plaintiff had no vertebral tenderness, and had full range of motion in the cervical and lumbar spines, a negative Spurling maneuver test and straight leg raising tests; a 2017 examination revealed, *inter alia*, full composite flexion and extension of the fingers, normal sensation distally, no pain with thumb extension, no extremity abnormalities, and normal peripheral pulses; the ALJ assigned "significant weight" to Dr. Silver's opinion that Plaintiff could, *inter alia*, lift, carry, push, and pull up to ten pounds occasionally. R. 14–16. In the view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *See Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

20

Although Plaintiff cites to portions of her testimony that she believes supports her position and undermines the ALJ's findings regarding Plaintiff's daily activities, including caring for her children, *Plaintiff's Brief*, ECF No. 14, pp. 12−14 (citing R. 88−90, 94, 96), consideration of Plaintiff's daily activities was but one of the factors that the ALJ considered when evaluating Plaintiff's subjective complaints, as previously noted. *See* R. 14−17. In any event, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

For all these reasons, the Court concludes that the ALJ sufficiently explained her reasoning in evaluating Plaintiff's subjective complaints, and the ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited

Claimant's daily activities and objective medical reports"). Accordingly, the ALJ's assessment

of Plaintiff's subjective complaints cannot serve as a basis for remand of this action. *Id*.

## VI.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42

U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  December 8, 2021                              _____*s/Norah McCann King*_____
                                                              NORAH McCANN KING
                                                    UNITED STATES MAGISTRATE JUDGE